

FILED
12/7/2021
EY
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 19 CR 226 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | MAGISTRATE JUDGE HARJANI |
| ROBERT M. KOWALSKI, | ) | Violations: Title 18, United States |
| JAN R. KOWALSKI, | ) | Code, Sections 152(1) and (8), |
| ROSALLIE C. CORVITE, | ) | 157(1), (2), and (3), 371, 656, and |
| JANE V. IRIONDO, fka JANE V. TRAN, | ) | 1005, and Title 26, United States |
| ALICIA MANDUJANO, | ) | Code, Sections 7203 and 7206(1) |
| CATHY M. TORRES, | ) | |
| JAMES R. CROTTY, | ) | Fourth Superseding Indictment |
| BOGUSLAW KASPROWICZ, | ) | |
| MIROSLAW KREJZA, | ) | |
| MAREK MATCZUK, | ) | |
| WILLIAM M. MAHON, | ) | |
| JANICE M. WESTON, | ) | |
| GEORGE F. KOZDEMBA, and | ) | |
| WILLIAM A. KOWALSKI | ) | |

## COUNT ONE

The SPECIAL MAY 2021 GRAND JURY charges:

1.     At times material to this Fourth Superseding Indictment:

a.     Washington Federal Bank for Savings (Washington Federal) was a savings association that was founded in 1913 and located in Chicago, Illinois. In or around December 2017, the Office of the Comptroller of the Currency (OCC) determined that Washington Federal was insolvent and that it had at least approximately $66 million in nonperforming loans. On or about December 15, 2017, the OCC closed Washington Federal and the Federal Deposit Insurance Corporation (FDIC), as a receiver, succeeded to all of Washington Federal's interests. The FDIC provided approximately $90 million to make account holders whole to the extent allowed by law.

b.     Beginning in or around 1989, the deposits of Washington Federal were insured by the FDIC.   Consequently, Washington Federal was subject to supervision by federal

and state regulators and to the laws and regulations enacted to ensure the safety and soundness of the banking system. These laws and regulations required that Washington Federal create and maintain comprehensive documentation of a borrower's ability to repay a loan, the value of the collateral in the event of default, and the steps taken to perfect its legal position regarding the borrower and the collateral. Among other things, the required standard documentation, as it related to loans secured by real property, included a promissory note, containing a promise to repay and the terms of repayment, and a security agreement, such as a mortgage, giving the bank an interest in the collateral. The promissory note was to be maintained by the bank and the mortgage recorded as a lien, thereby preventing the conveyance of the property without the bank's knowledge.

      c.    Washington Federal was required to regularly provide to the FDIC documentation of its financial condition, including Call Reports setting out, among other things, the performance of the bank's loan portfolio and the bank's income.

      d.    From in or around 2011, Washington Federal was supervised by the OCC which regularly monitored and conducted periodic examinations of the operations of Washington Federal. The OCC reviewed and relied on loan documentation and other records Washington Federal was required to contemporaneously create during the course of its operations, and documents that Washington Federal created for the purpose of providing them to the OCC and the FDIC, such as the Call Reports and trial loan balances, which disclosed delinquencies, compliance with lending limitations, and loan histories. The OCC also reviewed and relied upon reports and audits generated by third-party auditors of and consultants to Washington Federal, including Auditor A and Consultants A, B, and C.

2

e. Washington Federal was a member of the Federal Home Loan Bank of Chicago (FHLB) and had a line of credit, on which the FHLB made advances, for which Washington Federal loans served as collateral. The FHLB periodically required Washington Federal to provide a list of loans serving as collateral for the line of credit and documentation concerning those loans. Washington Federal also sold loans to the FHLB which Washington Federal continued to service.

f. The Currency and Foreign Transactions Reporting Act prohibited financial institutions from engaging in certain financial transactions with individuals and entities who were the subject of economic sanctions programs, as designated by the Office of Foreign Assets Control (OFAC). Washington Federal's policy required checking a bank customer against a list of individuals and entities on an OFAC list before certain transactions occurred.

g. Individual A was President, Chief Executive Officer, and Chairman of the Board of Directors of Washington Federal, and had an ownership interest in and engaged in the acquisition of real estate through Grom Development LLC.

h. Defendant WILLIAM M. MAHON was a member of Washington Federal's Board of Directors, audit committee, and loan committee responsible for approving loans made by Washington Federal.

i. Defendant JANICE M. WESTON was the Compliance Officer and a member of the Board of Directors of Washington Federal.

j. Defendant GEORGE F. KOZDEMBA was a member of Washington Federal's Board of Directors, audit committee, and loan committee responsible for approving loans made by Washington Federal.

3

k.      Defendant ROBERT M. KOWALSKI was an attorney licensed in the State of Illinois, with offices at 1918 West Cermak Road, Chicago, Illinois, who engaged in the investment in and construction, management, acquisition and sale of real property individually and through entities with which he was associated, including Indomitable LLC, Piorun Properties LLC, Burros Blancos LLC, Mountain Duck Properties LLC, Fulton Market Lofts LLC, and Grom Development LLC.

l.      Defendant BOGUSLAW KASPROWICZ had an ownership interest in and engaged in the acquisition of real estate through Thomas Development Co., Inc.

m.      Defendant MIROSLAW KREJZA had an ownership interest in and engaged in the acquisition of real estate through M & R Development, Inc.

n.      Defendant MAREK MATCZUK had an ownership interest in Mark M Group, Inc.

o.      Defendant WILLIAM A. KOWALSKI had an ownership interest in and engaged in the acquisition of real estate through entities with which he was associated, including Market Street Properties LLC, Sheffield Development Company, and Grom Development LLC.

p.      Defendant JAMES R. CROTTY was employed by Washington Federal in positions which included Vice President.

q.      Defendant ROSALLIE C. CORVITE was employed by Washington Federal in positions which included Chief Financial Officer and Treasurer.

r.      Defendant JANE V. IRIONDO, fka JANE V. TRAN, was employed by Washington Federal in positions which included Corporate Secretary.

s.      Defendant CATHY M. TORRES was employed by Washington Federal in

4

positions which included loan officer.

t.     Defendant ALICIA MANDUJANO was employed by Washington Federal in positions which included loan servicer.

2.     Beginning in or around at least 2004 and continuing until in or around 2018, at Chicago, in the Northern District of Illinois, and elsewhere,

ROBERT M. KOWALSKI,
ROSALLIE C. CORVITE,
JANE V. IRIONDO, fka JANE V. TRAN,
ALICIA MANDUJANO,
CATHY M. TORRES,
JAMES R. CROTTY,
BOGUSLAW KASPROWICZ,
MIROSLAW KREJZA,
MAREK MATCZUK, and
WILLIAM A. KOWALSKI,

defendants herein, together with Individual A, and persons known and unknown to the grand jury, did knowingly conspire to commit the following violations:

### Objects of the Conspiracy

(a) To knowingly make false entries in the books, reports, and statements of a bank, the deposits of which were insured by the FDIC, with intent to injure and defraud the bank and to deceive the OCC and the FDIC, in violation of Title 18, United States Code, Section 1005; and

(b) Being an officer, director, agent, or employee of, or connected in any capacity to a bank, the deposits of which were insured by the FDIC, with intent to injure and defraud the bank, to embezzle, abstract, purloin, and willfully misapply moneys, funds, and credits of the bank and moneys, funds, assets, and securities intrusted to

the custody and care of the bank, in violation of Title 18, United States Code, Section 656.

Overview of the Conspiracy

3.    It was part of the conspiracy that defendants ROBERT M. KOWALSKI, ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R. CROTTY, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, along with Individual A, and others, embezzled and concealed the embezzlement of at least approximately $31 million of and in the custody of Washington Federal and distributed the money to and for the benefit of defendants ROBERT M. KOWALSKI, KASPROWICZ, KREJZA, MATCZUK, and WILLIAM A. KOWALSKI, Individual A, and others.

4.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A, embezzled money of and in the custody of Washington Federal by transferring money to defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others, including without the required documentation and often without any documentation, and concealed the embezzlement from the FDIC, the OCC, and others by falsifying bank records.

5.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and JAMES R. CROTTY, along with Individual A and others, made and caused false entries in the books, reports, and

statements of Washington Federal to facilitate and accomplish the embezzlement of money of and in the custody of Washington Federal for the benefit of defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, Individual A, and others.

6.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A and others, made and caused false entries in the books, reports, and statements of Washington Federal with intent to injure and defraud Washington Federal and to deceive the OCC and the FDIC by concealing the embezzlement of money of and in the custody of Washington Federal for the benefit of defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, Individual A, and others.

7.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A and others, made and caused false entries in the books, reports, and statements of Washington Federal with intent to injure and defraud Washington Federal and to deceive the OCC and the FDIC as to the actual financial condition of Washington Federal, by materially understating the number of delinquent and nonperforming loans, inflating Washington Federal's income, and inflating the value of the collateral securing Washington Federal's loans.

<u>Manner in Which the Conspiracy was Conducted</u>

*Soliciting and Distributing Embezzled Funds in the Form of Proceeds of Purported Loans*

8.    It was further part of the conspiracy that defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others solicited and received embezzled money as the proceeds of purported Washington Federal loans knowing that certain purported loans were not properly documented and that, with respect to the loans which had documentation, repayment on the terms of these purported loans was not expected, and that defendants ROBERT M. KOWALSKI, KASPROWICZ, KREJZA, MATCZUK, and WILLIAM A. KOWALSKI, and others did not repay the purported loans on their terms.

9.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and JAMES R. CROTTY, along with Individual A and others, embezzled the money and distributed the money to and for the benefit of defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others, as the proceeds of purported Washington Federal loans, when in fact repayment on the terms of these purported loans was neither expected nor made.

10.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES, along with Individual A and others, fraudulently accounted for and concealed money embezzled and distributed to defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others in the

8

books, reports, and statements of Washington Federal as distributions from the purported loans from Washington Federal, including without fully documenting the purported loans and without sufficient or any collateral.

11.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and JAMES R. CROTTY, along with Individual A and others, distributed embezzled money to defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others in excess and in addition to the principal amounts on notes, on matured notes, and in excess and in addition to the value of the collateral securing the purported loans.

*Soliciting and Distributing Embezzled Funds in the Form of Checks and Wire Transactions*

12.    It was further part of the conspiracy that defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others solicited and received embezzled money in the form of checks drawn on Washington Federal's operating and loan disbursement accounts, and wire transfers of funds from those accounts.

13.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and JAMES R. CROTTY, along with Individual A, and others, distributed embezzled money to and for the benefit of defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others in the form of checks drawn

9

on Washington Federal's operating and loan disbursement accounts, and wire transfers of funds from those accounts.

*Soliciting and Distributing Embezzled Funds in the Form of Account Credits*

14.     It was further part of the conspiracy that defendant ROBERT M. KOWALSKI solicited and received embezzled money in the form of credits to accounts in the names of Piorun Properties LLC and Fulton Market Lofts LLC at Washington Federal, which defendant ROBERT M. KOWALSKI controlled.

15.     It was further part of the conspiracy that defendant ALICIA MANDUJANO, along with Individual A and others, distributed embezzled money to defendant ROBERT M. KOWALSKI in the form of credits to accounts in the names of Piorun Properties LLC and Fulton Market Lofts LLC at Washington Federal, which defendant ROBERT M. KOWALSKI controlled.

*Embezzled Funds for the Benefit of Individual A*

16.     It was further part of the conspiracy that defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, and WILLIAM A. KOWALSKI, and others used at least approximately $1.8 million in embezzled money for the benefit of Individual A, including the purchase of real estate and a Sea Ray 420 Sundancer boat named "Expelliarmus" (the Sea Ray boat), and payments on credit card accounts and other loans in the name of Individual A or an entity associated with Individual A, including Grom Development LLC.

*The Fulton Market District Lots*

17.     It was further part of the conspiracy that, in or around October 2004, defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A, through a trust beneficially owned by Grom Development LLC, purchased approximately 13 lots in the square block bounded by Halsted, Fulton Market, Green and Lake Streets in Chicago, which included 803 and 807 West Fulton Market (the Fulton Market District Lots), for approximately $6 million.

18.     It was further part of the conspiracy that defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A, through a trust beneficially owned by Grom Development LLC, purchased the Fulton Market District Lots with approximately $4.55 million from Washington Federal through the simultaneous resale of a portion of the Fulton Market District Lots to buyers who received financing from Washington Federal, including two $1,050,000 loans to Piorun LLC and Sheffield Development Company, respectively.

19.     It was further part of the conspiracy that, in or around 2008, defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A, caused Bank A to loan Grom Development LLC approximately $1.6 million secured by certain Fulton Market District Lots, which resulted in defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A, each receiving $500,000 of the loan proceeds.

20.     It was further part of the conspiracy that, in or around 2010, defendant JAMES R. CROTTY, Individual A, and others solicited and caused to be solicited over $1.8 million to be deposited on account as certificates of deposit at Washington Federal for the purpose of embezzling and distributing this money to honor Washington Federal letters of credit to Bank A

11

for the benefit of entities associated with defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and others.

21.     It was further part of the conspiracy that, in or around 2010, defendant ROBERT M. KOWALSKI and Individual A embezzled approximately $1.3 million, including money on account as certificates of deposit at Washington Federal, in the form of payments to Bank A to honor letters of credit securing financing related to certain Fulton Market District Lots, including for the benefit of defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, Piorun Properties LLC, Sheffield Development Company, and others.

22.     It was further part of the conspiracy that, in or around 2011, defendant ROBERT M. KOWALSKI and Individual A embezzled approximately $400,000 from Washington Federal in the form of payments to Bank A to honor letters of credit securing financing related to certain Fulton Market District Lots, including for the benefit of defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, Piorun Properties LLC, and Sheffield Development Company.

23.     It was further part of the conspiracy that, in or around 2011, defendant ROBERT M. KOWALSKI and Individual A embezzled approximately $330,000 from Washington Federal in the form of payments to Bank A to pay off financing related to a Fulton Market District Lot, including for the benefit of defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, Individual A, and Grom Development LLC.

24.     It was further part of the conspiracy that, in or around 2013, defendant ROBERT M. KOWALSKI and Individual A used approximately $560,000 embezzled from Washington Federal to make a nominee purchase of 807 West Fulton Market Street from the bankruptcy trustee of Market Street Properties LLC, after Market Street Properties LLC had successfully concealed

from the bankruptcy trustee that Market Street Properties LLC also owned 803 West Fulton Market Street and that Washington Federal was a creditor of Market Street Properties LLC.

*Purchase of the Powerboat "Expelliarmus" with Embezzled Funds*

25.     It was further part of the conspiracy that, in or around 2007, defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A, purchased the Sea Ray boat for approximately $450,000, including using (a) funds embezzled from Washington Federal through purported loans to land trusts beneficially owned by Sheffield Development Company on which payments were not made as required, which were purportedly secured by vacant lots in the 7500 and 7600 blocks of West 64th Street in Summit, Illinois, and (b) a loan from Bank B on which payments were made using funds embezzled from Washington Federal.

26.     It was further part of the conspiracy that, in or around 2008, defendant WILLIAM A. KOWALSKI and Individual A "refinanced" purported Washington Federal loans used to purchase the Sea Ray boat into a single $160,000 loan from Washington Federal to a land trust beneficially owned by Sheffield Development Company on which defendant WILLIAM A. KOWALSKI did not make payments as purportedly required, and which was purportedly secured by a vacant lot on the 7500 block of West 64th Street in Summit, Illinois.

*Paying Individual A's Accounts with Embezzled Funds*

27.     It was further part of the conspiracy that defendant BOGUSLAW KASPROWICZ used at least approximately $1.6 million in embezzled money for the benefit of Individual A by using embezzled funds to make payments on credit card accounts and other loans in the name of Individual A or an entity associated with Individual A, and payments to Bank B for the loan for the purchase of the Sea Ray boat.

*Paying Litigation Expenses With Embezzled Funds*

28.     It was further part of the conspiracy that defendant ROBERT M. KOWALSKI and Individual A, in order to pay an appeal bond posted by Insurance Company A on behalf of defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, embezzled approximately $655,000 from Washington Federal in the form of loans to defendant WILLIAM A. KOWALSKI and to Indomitable LLC, purportedly secured by properties which were either not owned by the borrower or inflated in value, including the same vacant lot in the 7500 block of 64th Street in Summit, Illinois, which had been used in embezzling money to purchase the Sea Ray boat.

*Concealing Nonperforming Loans of Non-Embezzling Bank Customers*

29.     It was further part of the conspiracy that for the purpose of concealing the financial condition of Washington Federal, defendant ROBERT M. KOWALSKI, along with Individual A, concealed nonperforming loans of non-embezzling bank customers by fraudulently causing those bank customers to enter into what was represented to be deed in lieu of foreclosure transactions with Washington Federal that would extinguish the bank customers' liability on their respective loans. In reality, defendant ROBERT M. KOWALSKI and Individual A caused the bank customers' properties serving as collateral for nonperforming loans to be transferred, not to Washington Federal, but to entities controlled by defendant ROBERT M. KOWALSKI, while the bank customers' nonperforming loans remained on Washington Federal's books, which were falsified to conceal that the loans were nonperforming.

*Embezzling Bank Collateral*

30.     It was further part of the conspiracy that defendant ROBERT M. KOWALSKI, along with Individual A, caused properties that were collateral for other bank customers' nonperforming loans, including properties on S. Vincennes Avenue, Chicago, Illinois, to be transferred to entities controlled by defendant ROBERT M. KOWALSKI, and concealed such transfers, which properties defendant ROBERT M. KOWALSKI retained for his own benefit.

31.     It was further part of the conspiracy that defendant ROBERT M. KOWALSKI, along with Individual A, caused rental income from properties which was collateral for other bank customers' nonperforming loans to be transferred to entities controlled by defendant ROBERT M. KOWALSKI, who used these funds for his own benefit, which funds included Housing Choice Voucher Program payments, including for tenants residing at properties on S. Vincennes Avenue, Chicago, Illinois.

*Falsifying Internal Bank Records to Conceal Embezzlement*

32.     It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A and others, fraudulently created false notes, loan modification agreements, and other loan documents to make it appear that the purported loans under which money embezzled from Washington Federal was distributed to defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others were properly documented.

33.     It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A, fraudulently

15

altered appraisals to inflate the valuation of property for the purpose of making it appear in Washington Federal's records that the property provided sufficient collateral for purported loans for the benefit of defendant ROBERT M. KOWALSKI and others.

34.　　It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A and others, made false entries and documents in Washington Federal's records to support insider loans, including to William M. Mahon.

35.　　It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A, advanced and caused to be advanced interest payments on the purported loans to defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others, in order to make it appear that the purported loans were performing, and then added the amount advanced to the balance of the purported loans.

36.　　It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, embezzled money from Washington Federal and used the money to pay the real estate taxes on the properties associated with defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others, and then added the amount advanced to the balance of purported loans, which defendants ROBERT M. KOWALSKI, KASPROWICZ, KREJZA, MATCZUK, and WILLIAM A. KOWALSKI were not expected to and did not repay.

37.　　It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, accounted and caused to be

16

accounted for embezzled funds by including them in the balance of purported loan accounts, even though payment was not expected or made, for the purpose of disguising the nature and extent of the embezzlement.

38.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, periodically rebalanced and caused to be rebalanced the amounts of the embezzled funds attributed to purported loans and loan accounts in order to conceal the nature and extent of the embezzlement, and the amounts received by defendants ROBERT M. KOWALSKI, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, their related entities, and others.

39.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, accounted for interest payments advanced to the purported loans and certain nonperforming loans by adding those payment amounts to the principal balance of the loan accounts.

40.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, entered into the books and records of Washington Federal as income the interest payments made on the purported loans through the advancing of payments, which caused the bank's income to be inflated in the bank's books and records, concealing Washington Federal's true financial condition.

*Falsifying Records Provided to Consultants, the OCC, the FDIC, and the FHLB*

41.     It was further part of the conspiracy that defendant ROSALLIE C. CORVITE, along with Individual A and others, provided and caused to be provided to consultants false information regarding loans, including to Consultant A, whose reports were provided to the OCC

17

during examinations, which loan information was false in that maturity dates of loans were altered to conceal that the purported loans to defendant ROBERT M. KOWALSKI and others were not performing.

42.     It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, and JAMES R. CROTTY, along with Individual A and others, provided false loan lists to the FHLB for the purpose of pledging collateral for financing from the FHLB, which loan lists included false borrower identities and payment histories.

43.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, provided and caused to be provided false Call Reports to the FDIC, which Call Reports included schedules that omitted and concealed delinquent loans, including the purported loans to defendants ROBERT M. KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others, and inflated the bank's income.

44.     It was further part of the conspiracy that defendant JAMES R. CROTTY, along with Individual A, falsely represented that Washington Federal could not provide a trial loan balance generated from the bank's bookkeeping system as requested by the OCC, and that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES, and others, provided and caused to be provided false trial loan balances to the OCC, which trial loan balances contained false information about Washington Federal's loans, including the identity of the borrower, fictitious loan balances, and payment histories, and omitted purported loans associated with defendants ROBERT M.

18

KOWALSKI, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, and others.

45.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, and JAMES R. CROTTY, along with Individual A and others, altered and caused to be altered internal loan documents, including appraisals, prior to the review of those documents by examiners from the OCC.

46.     It was further part of the conspiracy that defendants ROBERT M. KOWALSKI, ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R. CROTTY, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI, along with Individual A, and others, did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the conspiracy and the purposes of those acts.

### Overt Acts

47.     In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, defendants ROBERT M. KOWALSKI, ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R. CROTTY, BOGUSLAW KASPROWICZ, MIROSLAW KREJZA, MAREK MATCZUK, and WILLIAM A. KOWALSKI committed one or more overt acts in the Northern District of Illinois, including the following:

a.     On or about July 13, 2007, defendant ROBERT M. KOWALSKI caused Washington Federal to issue a $190,000 check payable to defendant WILLIAM A. KOWALSKI for use as a down payment for the purchase of the Sea Ray boat.

19

b.        On or about July 13, 2007, defendant WILLIAM A. KOWALSKI endorsed a $190,000 Washington Federal check payable to defendant WILLIAM A. KOWALSKI over to the seller of the Sea Ray boat.

c.        On or about July 13, 2007, defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A, each signed a retail installment contract to obtain approximately $250,000 in financing to purchase the Sea Ray boat.

d.        On or about October 18, 2011, defendants JANE V. IRIONDO, fka JANE V. TRAN, and CATHY M. TORRES altered and caused to be altered appraisals for two properties owned by William M. Mahon which served as collateral for two mortgages at Washington Federal. Specifically, on that date, defendant IRIONDO sent an email to defendant TORRES with the two altered appraisals attached, with a note that stated, "Hi Cathy, Here are the Mahon appraisals. Please let me know if any of these look awkward and I will fix it. – Jane."   The false items on the altered appraisals include inflated appraisal values and inflated values for the listed comparable sales.

e.        On or about May 10, 2012, defendant ALICIA MANDUJANO, at the direction of Individual A, embezzled funds in the form of a check drawn on a Washington Federal operating account in the amount of approximately $74,086 and payable to the Cook County Clerk for payment of real estate taxes on a property beneficially owned by defendant MAREK MATCZUK, which defendant MATCZUK was not expected to and did not repay.

f.        On or about September 19, 2012, defendant JAMES R. CROTTY falsely represented on behalf of Washington Federal to the FHLB that "all loans pledged as collateral meet the eligibility requirements" and that the loan data supplied to the FHLB was accurate, when

in fact the data was not accurate and certain Washington Federal loans pledged as collateral were delinquent and thus did not meet eligibility requirements.

       g.     On or about December 7, 2012, defendant MIROSLAW KREJZA solicited and received embezzled funds in the form of a check drawn on a Washington Federal operating account in the amount of approximately $18,000 and payable to M&R Development, which defendant KREJZA was not expected to and did not repay.

       h.     On or about May 30, 2013, defendant ROSALLIE CORVITE sent and caused to be sent to Consultant A an email which falsely represented the maturity dates of a number of loans related to defendant ROBERT M. KOWALSKI.

       i.     On or about June 18, 2013, during an examination by the OCC, defendant JANE V. IRIONDO, fka JANE V. TRAN, sent an email to defendants CATHY M. TORRES and JAMES R. CROTTY, which stated, in part, "Please see attached.   I cannot fix the 'Supplemental Addendum' pages.   Those will need to be done with scissors and copier.   The interior photos are fixed."   Attached to the email was an appraisal for a property on S. Vincennes Avenue, which was beneficially owned by defendant ROBERT M. KOWALSKI, in which a number of items on the appraisal had been fraudulently altered, including the date of the appraisal, the interior photographs of the property, the value of comparable properties, and the appraised value.

       j.     On or about June 18, 2013, defendant JANE V. IRIONDO, fka JANE V. TRAN, sent a second email to defendants CATHY M. TORRES and JAMES R. CROTTY, which stated, in part, "Please see attached with corrections and disregard previous appraisal sent." Attached to this email was a second altered appraisal for a property on S. Vincennes Avenue, with additional alterations in the supplemental addendum to inflate the value of comparable sales.

k.      On or about June 19, 2013, defendant CATHY M. TORRES sent an email to Individual A and JAMES R. CROTTY, which stated, in part, that "Jim, The [OCC] auditors need both [Vincennes] files back tomorrow."

l.      On or about June 20, 2013, defendant JAMES R. CROTTY created a record indicating that the OCC had reviewed the Vincennes loan file with the altered appraisal.

m.      On or about October 1, 2014, defendant ROBERT M. KOWALSKI solicited and received embezzled funds in the form of a $100,000 transfer into a bank account at Washington Federal in the name of Piorun Properties LLC, for the benefit of defendant ROBERT M. KOWALSKI, which defendant ROBERT M. KOWALSKI was not expected to and did not repay.

n.      On or about November 26, 2014, defendant JAMES R. CROTTY falsely represented to the OCC that Washington Federal could not produce a system generated trial loan balance as requested by the OCC.

o.      On or about February 27, 2015, defendant ALICIA MANDUJANO reduced the principal amount of two of defendant ROBERT M. KOWALSKI's loan accounts by approximately $2.3 million dollars through accounting entries labeled as "principal only receipts," which inflated the principal amount of thirteen other loans related to defendant ROBERT M. KOWALSKI by the same amount.

p.      On or about March 19, 2015, defendant ALICIA MANDUJANO, at the direction of Individual A, embezzled funds in the form of checks drawn on a Washington Federal operating account in the total amount of approximately $54,513 and payable to the Cook County Clerk for payment of real estate taxes on properties beneficially owned by defendant ROBERT M.

22

KOWALSKI, and made corresponding accounting entries showing principal distributions on two loan accounts related to defendant ROBERT M. KOWALSKI, which defendant ROBERT M. KOWALSKI was not expected to and did not repay.

q.  On or about November 9, 2015, defendant ALICIA MANDUJANO, at the direction of Individual A, embezzled funds in the form of checks drawn on a Washington Federal operating account in the amount of approximately $114,022 and payable to the Cook County Clerk for payment of real estate taxes on properties beneficially owned by defendant MIROSLAW KREJZA, which defendant KREJZA was not expected to and did not repay.

r.  On or about April 1, 2016, defendant ROBERT M. KOWALSKI, through an entity in which he had an ownership interest, received from the Chicago Housing Authority approximately $4,139 in Housing Choice Voucher Program payments from units in the S. Vincennes Avenue properties, which money was the property of Washington Federal and which defendant ROBERT M. KOWALSKI did not pay over to Washington Federal.

s.  On or about May 2, 2016, defendant JAMES R. CROTTY created and caused to be provided to the OCC a fraudulent Washington Federal trial loan balance that falsified payment dates and principal amounts, and intentionally omitted loans.

t.  On or about June 6, 2016, defendant BOGUSLAW KASPROWICZ solicited and received embezzled funds in the form of a check drawn on a Washington Federal operating account in the amount of approximately $68,000 and payable to Thomas Development Co., which defendant KASPROWICZ was not expected to and did not repay.

u.  On or about September 7, 2016, defendant BOGUSLAW KASPROWICZ used approximately $2,087 embezzled from Washington Federal to make a payment on a loan at

23

Bank B that was used to purchase the Sea Ray boat for the benefit of defendants ROBERT M. KOWALSKI and WILLIAM A. KOWALSKI, and Individual A.

        v.       On or about December 21, 2016, defendant JANE V. IRIONDO, fka JANE V. TRAN, together with Individual A, facilitated William A. Mahon falsely communicating to the FHLB that Washington Federal's delay in providing a list of loans to pledge as collateral was caused by Individual A's unavailability, and that Washington Federal's board was displeased by Washington Federal's delay in completing the loan list.

        w.      On or about December 22, 2016, defendant JANE V. IRIONDO, fka JANE V. TRAN, sent and caused to be sent via email to the FHLB a list of loans that Washington Federal intended to pledge as collateral to the FHLB which contained false representations, including the identity of borrowers and the last date payments were made on the loans.

        x.      On or about January 19, 2017, defendant MAREK MATCZUK solicited and received embezzled funds in the form of a check drawn on a Washington Federal operating account in the amount of approximately $25,000 and payable to Mark M Group, which defendant MATCZUK was not expected to and did not repay.

        y.      On or about February 10, 2017, defendant BOGUSLAW KASPROWICZ used approximately $22,000 in funds embezzled from Washington Federal to make a payment on a credit card account in the name of an entity controlled by Individual A, which was used for the benefit of Individual A.

        z.      On or about October 20, 2017, defendant MIROSLAW KREJZA solicited and received embezzled funds in the form of a check drawn on a Washington Federal operating

account in the amount of approximately $5,000 and payable to M & R Development, Inc., which defendant KREJZA was not expected to and did not repay.

       aa.    On or about October 30, 2017, defendant ROSALLIE CORVITE filed and caused to be filed a Call Report with the FDIC which falsely stated on Schedule RC-N that there were approximately $218,000 worth of loans that were 30-89 days delinquent and no loans that were 90 days or more delinquent, when in fact the bank had millions of dollars in loans that were more than 90 days delinquent.

       bb.    In or around October 2017, defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES caused to be provided to the OCC a trial loan balance purporting to be a list of all of Washington Federal's loans, which was false in that it omitted loans and included fictitious loans, as well as false loan balances and loan payment histories;

       All in violation of Title 18, United States Code, Section 371.

25

## COUNT TWO

The SPECIAL MAY 2021 GRAND JURY further charges:

1.    Paragraphs 1.a. through 1.j, and 1.p. through 1.t. of Count One are incorporated here.

2.    Beginning in or around at least 2011 and continuing until in or around 2017, at Chicago, in the Northern District of Illinois, and elsewhere,

ROSALLIE C. CORVITE,
JANE V. IRIONDO, fka JANE V. TRAN,
ALICIA MANDUJANO,
CATHY M. TORRES,
JAMES R. CROTTY,
WILLIAM M. MAHON,
JANICE M. WESTON, and
GEORGE F. KOZDEMBA,

defendants herein, together with Individual A, and persons known and unknown to the grand jury, did knowingly conspire to commit the following violations:

(a) To knowingly make false entries in the books, reports, and statements of a bank, the deposits of which were insured by the FDIC, to deceive the OCC, in violation of Title 18, United States Code, Section 1005; and

(b) To obstruct and attempt to obstruct an examination of a financial institution by the OCC, an agency with jurisdiction to conduct an examination of the financial institution, in violation of Title 18, United States Code, Section 1517.

Manner in Which the Conspiracy was Conducted

3.    It was part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R.

CROTTY, WILLIAM M. MAHON, JANICE M. WESTON, and GEORGE F. KOZDEMBA, along with Individual A, and others, made and caused to be made false entries in the records of Washington Federal and provided and caused to be provided these false records to the OCC with intent to deceive the OCC and obstruct OCC examinations of Washington Federal by making it appear that Washington Federal was operating in compliance with banking rules and internal policies and controls.

  4. It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and JANICE M. WESTON, along with Individual A, and others, provided false information and altered documents to consultants, who used that false information and the altered documents to generate workpapers and reports that defendants CORVITE and WESTON, along with Individual A, knew would be provided to the OCC during OCC examinations of Washington Federal.

  5. It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANICE M. WESTON, and GEORGE F. KOZDEMBA, along with Individual A, and others, caused to be provided to the OCC, during OCC examinations, reports generated by consultants and auditors, which defendants CORVITE, WESTON, and KOZDEMBA, along with Individual A, knew contained false information.

  6. It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R. CROTTY, WILLIAM M. MAHON, JANICE M. WESTON, and GEORGE F. KOZDEMBA, along with Individual A, and others, made and caused to be made false entries in the records of Washington Federal and provided and caused to be provided these false records to

27

the OCC with intent to obstruct OCC examinations of Washington Federal intended to evaluate Washington Federal's loan portfolios.

7.     It was further part of the conspiracy that defendants JAMES R. CROTTY, WILLIAM M. MAHON, and GEORGE F. KOZDEMBA, along with Individual A, and others, made and caused to be made and provided to the OCC records related to lending, including backdated loan approval forms, which falsely represented that Washington Federal's loan committee had approved certain loans before the loans were funded.

8.     It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R. CROTTY, WILLIAM M. MAHON, JANICE M. WESTON, and GEORGE F. KOZDEMBA, along with Individual A, and others, did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the conspiracy and the purposes of those acts.

Overt Acts

9.     In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, CATHY M. TORRES, JAMES R. CROTTY, WILLIAM M. MAHON, JANICE M. WESTON, and GEORGE F. KOZDEMBA committed one or more overt acts in the Northern District of Illinois, including the following:

a.     In or around November 2011, defendants JANICE M. WESTON and GEORGE F. KOZDEMBA caused to be provided to the OCC a copy of an auditor's report completed by Auditor A which falsely stated that Washington Federal had no non-performing

28

loans during 2010 and the first quarter of 2011, when defendants WESTON and KOZDEBMA knew that Auditor A had been provided with false information regarding at least one of Washington Federal's outstanding loans.

      b.     In or around June 2013, defendants JANICE M. WESTON and CATHY M. TORRES caused to be provided to the OCC a Compliance Review Report completed by Consultant B, along with the workpapers from Consultant B, knowing that Consultant B had been provided with an altered document purporting to show that a customer's name was queried against an OFAC database on a certain date, when no such query had been made on that date.

      c.     In or around June 2013, defendant GEORGE F. KOZDEMBA, along with Individual A, caused to be provided to the OCC a Report of Loan Review purportedly completed by defendant KOZDEMBA in July 2012, when defendant KOZDEMBA knew he did not complete a loan review in July 2012, and that he did not sign the report until approximately May 2013.

      d.     In or around June 2013, defendant ROSALLIE C. CORVITE, along with Individual A, caused to be provided to the OCC a Forecast Income Statement from Consultant A, knowing that Consultant A had been provided with false information about the bank's loans during the preparation of the statement by Consultant A.

      e.     In or around December 2014, defendant WILLIAM M. MAHON, along with Individual A, caused to be provided to the OCC two loan files for loans that defendant MAHON had obtained from Washington Federal in 2011, which included loan applications on which defendant MAHON omitted an outstanding loan of approximately $130,000 which defendant MAHON had obtained from Individual A and Individual A's wife.

      f.     In or around December 2014, defendants WILLIAM M. MAHON and

JAMES R. CROTTY, along with Individual A, caused to be provided to the OCC a loan file for Customer A which contained a loan committee approval form purportedly signed on or about April 4, 2014 by defendants MAHON and CROTTY, along with Individual A, when in fact the form was not created until on or about August 15, 2014.

        g.      In or around December 2014, defendants GEORGE F. KOZDEMBA, WILLIAM M. MAHON, and JAMES R. CROTTY, along with Individual A, caused to be provided to the OCC a loan file for Customer B which contained a loan committee approval form purportedly signed on or about March 6, 2014 by defendants MAHON and CROTTY, along with Individual A, when in fact the form was not created until on or about April 29, 2014.

        h.      In or around December 2014, defendant JANICE M. WESTON caused to be provided to the OCC an Internal Audit Report prepared by Consultant C knowing that she had provided to Consultant C a questionnaire falsely representing that Washington Federal followed its procedures regarding the timeliness of OFAC checks when, as defendant WESTON knew, those procedures were not always followed.

        i.      In or around May 2016, defendants WILLIAM M. MAHON and JAMES R. CROTTY, along with Individual A, caused to be provided to the OCC a loan file for Customer C which contained a loan committee approval form purportedly signed on or about October 13, 2015 by defendants MAHON and CROTTY, along with Individual A, when in fact the form was not created until on or about May 20, 2016.

        j.      In or around May 2016, defendants WILLIAM M. MAHON and JAMES R. CROTTY, along with Individual A, caused to be provided to the OCC a loan file for Customer D which contained a loan committee approval form purportedly signed in or around September

2015 by defendant MAHON, along with Individual A, when in fact the form was not created until on or about May 20, 2016.

k.     In or around May 2016, defendants GEORGE F. KOZDEMBA and JAMES R. CROTTY, along with Individual A, caused to be provided to the OCC a loan file for Customers E and F which contained a loan committee approval form purportedly signed on or about March 13, 2015 by defendants KOZDEMBA and CROTTY, along with Individual A, when in fact the form was not created until on or about May 4, 2015.

l.     In or around May 2016, defendants GEORGE F. KOZDEMBA and WILLIAM M. MAHON, along with Individual A, caused to be provided to the OCC minutes from an October 2015 loan committee meeting which falsely stated that pending loans were reviewed and approved during the meeting, when certain of the loans listed on the agenda for that meeting already had been funded by Washington Federal.

m.     In or around May 2016, defendants GEORGE F. KOZDEMBA and WILLIAM M. MAHON, along with Individual A, caused to be provided to the OCC minutes from a September 2015 loan committee meeting which falsely stated that pending loans were reviewed and approved during the meeting, when certain of the loans listed on the agenda for that meeting already had been funded by Washington Federal.

n.     In or around October 2017, defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES caused to be provided to the OCC a trial loan balance purporting to be a list of all of Washington Federal's loans, which was false in that it omitted loans and included fictitious loans, as well as false loan balances and loan payment histories.

o.      On or about November 7, 2017, defendant JANE V. IRIONDO, fka JANE V. TRAN, along with Individual A, caused to be provided to the OCC altered wire transfer confirmations, which purported to show payoffs of certain Washington Federal loans, when in fact the wire transfers did not occur on the dates shown on the altered wire transfer confirmations and the loans were not paid off on the dates shown on the altered wire transfer confirmations;

All in violation of Title 18, United States Code, Section 371.

32

## COUNT THREE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d., 1.g., 1.p., 1.r. and 1.s. of Count One are incorporated here.

2.      On or about June 18, 2013, at Chicago, in the Northern District of Illinois, Eastern Division,

JANE V. IRIONDO, fka JANE V. TRAN,<br>
CATHY M. TORRES, and<br>
JAMES R. CROTTY,

defendants herein, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC, any agent or examiner appointed to examine the affairs of such bank, and the FDIC, namely, defendants JANE V. IRIONDO, fka JANE V. TRAN, CATHY M. TORRES, and JAMES R. CROTTY created and caused to be created an appraisal for a property on S. Vincennes Avenue, which falsified the date of the appraisal, the interior photographs of the property, the value of comparable properties, and the appraised value;

In violation of Title 18, United States Code, Section 1005.

## COUNT FOUR

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. through 1.d. and 1.t. of Count One are incorporated here.

2.     On or about October 1, 2014, at Chicago, in the Northern District of Illinois, Eastern Division,

### ALICIA MANDUJANO,

defendant herein, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC, any agent or examiner appointed to examine the affairs of such bank, and the FDIC, namely, defendant ALICIA MANDUJANO made an entry into Washington Federal's electronic records showing a $100,000 loan distribution from one of defendant ROBERT M. KOWALSKI's purported loan accounts;

In violation of Title 18, United States Code, Section 1005.

34

## COUNT FIVE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d. and 1.q. of Count One are incorporated here.

2.      On or about October 30, 2017, at Chicago, in the Northern District of Illinois, Eastern Division,

ROSALLIE C. CORVITE,

defendant herein, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC, any agent or examiner appointed to examine the affairs of such bank, and the FDIC, namely, defendant ROSALLIE C. CORVITE created and caused to be created a Call Report which falsely stated on Schedule RC-N that there were approximately $218,000 worth of loans that were 30-89 days delinquent and no loans that were 90 days or more delinquent, when in fact the bank had millions of dollars in loans that were more than 90 days delinquent;

In violation of Title 18, United States Code, Section 1005.

## COUNT SIX

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. through 1.d. and 1.q. through 1.t. of Count One are incorporated here.

2.     In or around October 2017, at Chicago, in the Northern District of Illinois, Eastern Division,

ROSALLIE C. CORVITE,
JANE V. IRIONDO, fka JANE V. TRAN,
ALICIA MANDUJANO, and
CATHY M. TORRES,

defendants herein, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC, any agent or examiner appointed to examine the affairs of such bank, and the FDIC, namely, defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES created and caused to be created a trial loan balance purporting to be a list of all of Washington Federal's loans, which was false in that it omitted loans and included fictitious loans, as well as false loan balances and loan payment histories;

In violation of Title 18, United States Code, Section 1005.

36

## COUNT SEVEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d. and 1.k. of Count One are incorporated here.

2.      Beginning in or around at least 2007 and continuing until in or around December 2017, at Chicago, in the Northern District of Illinois, and elsewhere,

ROBERT M. KOWALSKI,

defendant herein, did aid, abet, counsel, command, induce and procure the embezzlement, abstraction, purloining, and willful misapplication by an officer, director, agent, or employee of Washington Federal, the deposits of which were insured by the FDIC, of in excess of approximately $8 million in moneys, funds, and credits of Washington Federal and moneys, funds, assets, and securities intrusted to the custody and care of Washington Federal, with intent to injure and defraud Washington Federal;

In violation of Title 18, United States Code, Sections 656 and 2.

## COUNT EIGHT

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d., and 1.1. of Count One are incorporated here.

2.      Beginning in or around at least 2009 and continuing until in or around December 2017, at Chicago, in the Northern District of Illinois, and elsewhere,

BOGUSLAW KASPROWICZ,

defendant herein, did aid, abet, counsel, command, induce and procure the embezzlement, abstraction, purloining, and willful misapplication by an officer, director, agent, or employee of Washington Federal, the deposits of which were insured by the FDIC, of in excess of approximately $14.3 million in moneys, funds, and credits of Washington Federal and moneys, funds, assets, and securities intrusted to the custody and care of Washington Federal, with intent to injure and defraud Washington Federal;

In violation of Title 18, United States Code, Sections 656 and 2.

## COUNT NINE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d., and 1.m. of Count One are incorporated here.

2.      Beginning in or around at least 2004 and continuing until in or around December 2017, at Chicago, in the Northern District of Illinois, and elsewhere,

MIROSLAW KREJZA,

defendant herein, did aid, abet, counsel, command, induce and procure the embezzlement, abstraction, purloining, and willful misapplication by an officer, director, agent, or employee of Washington Federal, the deposits of which were insured by the FDIC, of in excess of approximately $2.8 million in moneys, funds, and credits of Washington Federal and moneys, funds, assets, and securities intrusted to the custody and care of Washington Federal, with intent to injure and defraud Washington Federal;

In violation of Title 18, United States Code, Sections 656 and 2.

39

## COUNT TEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d., and 1.n. of Count One are incorporated here.

2.      Beginning in or around at least 2007 and continuing until in or around December 2017, at Chicago, in the Northern District of Illinois, and elsewhere,

MAREK MATCZUK,

defendant herein, did aid, abet, counsel, command, induce and procure the embezzlement, abstraction, purloining, and willful misapplication by an officer, director, agent, or employee of Washington Federal, the deposits of which were insured by the FDIC, of in excess of approximately $6.1 million in moneys, funds, and credits of Washington Federal and moneys, funds, assets, and securities intrusted to the custody and care of Washington Federal, with intent to injure and defraud Washington Federal;

In violation of Title 18, United States Code, Sections 656 and 2.

40

## COUNT ELEVEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      At times material to this Count:

      a.      Paragraphs 1.a. and 1.k. of Count One are incorporated here.

      b.      Defendant JAN R. KOWALSKI, who was defendant ROBERT M. KOWALSKI'S sister, was an attorney licensed in the State of Illinois, had an attorney trust account at Bank C, and had offices at 1918 West Cermak Road, Chicago, Illinois.

      c.      In or around November 2013, pursuant to a written agreement, defendant ROBERT M. KOWALSKI transferred his interest in 833-57 West Fulton Market Street, Chicago, Illinois to Company A and relinquished any claims against Company A relating to that property and, in exchange, Company A paid $1 million to, and forgave certain debts of, defendant ROBERT M. KOWALSKI.

      d.      In or around 2014, defendant ROBERT M. KOWALSKI created Mountain Duck Properties LLC with a nominee owner, used a portion of the $1 million received from Company A to purchase properties and then placed title to certain of those properties in land trusts in which the beneficial owner was Mountain Duck Properties LLC (the Mountain Duck Properties).

      e.      Defendant ROBERT M. KOWALSKI had a cause of action in the lawsuit *Robert M. Kowalski v. Mountain Duck Properties LLC,* in the Circuit Court of Cook County, Illinois, 17 CH 13314 (the Mountain Duck Properties Lawsuit), in which defendant ROBERT M. KOWALSKI, represented by defendant JAN R. KOWALSKI, alleged that he, and not the nominee owner, was the sole owner of Mountain Duck Properties LLC, the five related land trusts in which Mountain Duck Properties LLC was a beneficiary, and the Mountain Duck Properties.

41

f.      Piorun Properties LLC received income from the Chicago Housing Authority in the form of Housing Assistance Payments related to the Mountain Duck Properties and Forms 1099 documenting this income.

g.      Individuals receiving gross income over certain threshold amounts and corporations were required to file annual income tax returns with the Internal Revenue Service, accurately listing the gross income received during the tax year.

h.      Piorun Properties LLC was an entity in which defendant ROBERT M. KOWALSKI had an ownership interest, and, for tax years 2014 and 2015, was required to file a U.S. Income Tax Return for an S Corporation (Form 1120S with schedules and attachments). The ordinary income and losses of Piorun Properties LLC required to be reported on the Form 1120S flowed through to the shareholders of Piorun Properties LLC, including defendant ROBERT M. KOWALSKI personally, and were required to be reported on defendant ROBERT M. KOWALSKI's U.S. Individual Income Tax Return (Form 1040 with schedules and attachments). Defendant ROBERT M. KOWALSKI conducted personal financial transactions using the bank accounts of business entities, including Piorun Properties LLC, at Washington Federal.

i.      Indomitable LLC was an entity in which defendant ROBERT M. KOWALSKI had an ownership interest, and, for tax year 2014, filed a U.S. Income Tax Return for an S Corporation (Form 1120S with schedules and attachments). The ordinary income and losses of Indomitable LLC required to be reported on the Form 1120S flowed through to the shareholders of Indomitable LLC, including defendant ROBERT M. KOWALSKI personally, and were required to be reported on defendant ROBERT M. KOWALSKI's U.S. Individual Income Tax Return (Form 1040 with schedules and attachments).

### The Divorce Case

j.        Defendant ROBERT M. KOWALSKI was a party to a divorce case in the Circuit Court of Cook County, Illinois, 14 D 6997 (the Divorce Case), in which defendant ROBERT M. KOWALSKI was represented by defendant JAN R. KOWALSKI.

k.        Under the Internal Revenue Code, alimony payments made under a divorce or separation decree or agreement were taken as a deduction from gross income in arriving at the payor's adjusted gross income in the year they were paid, and were taxable income for the party receiving the alimony payments.

l.        Defendant ROBERT M. KOWALSKI was not ordered to make alimony payments to his spouse, nor did he agree to make alimony payments to his spouse, as part of the Divorce Case.

### The Bankruptcy

m.        On or about March 29, 2018, defendant ROBERT M. KOWALSKI filed a petition under Title 11 of the United States Code initiating a Chapter 11 bankruptcy case, *In re Robert M. Kowalski*, 18-09130, in the United States Bankruptcy Court for the Northern District of Illinois (the Kowalski Bankruptcy Case).

n.        The FDIC, as a receiver and the successor in interest to Washington Federal, was the largest creditor in the Kowalski Bankruptcy case. Defendant ROBERT M. KOWALSKI's spouse was also a creditor in the Kowalski Bankruptcy Case.

o.        The filing of a bankruptcy petition automatically stayed collection activity by creditors against the debtor.

p.        The filing of a bankruptcy petition by a debtor created a bankruptcy estate that included all legal or equitable interests of the debtor in property as of the commencement of

43

the case.

q.     A debtor was required to file under penalty of perjury a Statement of Financial Affairs and Schedules making disclosures, including as follows:

i.     The Statement of Financial Affairs required the debtor to identify his businesses and any legal actions.

ii.    Schedule A/B required the debtor to disclose any legal or equitable interests in cash; negotiable instruments, including personal checks, cashier's checks and money orders; incorporated and unincorporated business entities, including LLCs; financial accounts; and claims against third-parties.

r.     A debtor who filed a Chapter 11 bankruptcy petition was a "debtor-in-possession" and charged with certain obligations and responsibilities as if the debtor was a trustee. The debtor-in-possession was a fiduciary for his creditors whose obligations included being accountable for all estate property, and filing both Periodic Reports Regarding Value, Operations and Profitability of Entities in Which the Estate of a Debtor Holds a Substantial or Controlling Interest (Periodic Reports) and Monthly Operating Reports with a Summary of Cash Receipts and Cash Disbursements (Monthly Operating Reports).

s.     In all Chapter 11 cases, the United States Trustee conducted an Initial Debtor Interview at which the United States Trustee explained the debtor-in-possession's duties and obligations, including filing the Periodic Reports and Monthly Operating Reports and opening a Debtor-in-Possession Account into which the debtor-in-possession was required to deposit all funds.

t.     A debtor was required to appear at a Meeting of Creditors and to testify under oath concerning his financial affairs.

44

u.      Seven days prior to the Meeting of Creditors, a debtor was required to provide to the United States Trustee a copy of the federal income tax return filed with the Internal Revenue Service for the most recent year prior to the commencement of the case. At the Initial Debtor Interview, the United States Trustee at times required that a debtor provide additional documentation, including copies of federal income tax returns filed with the Internal Revenue Service for additional prior years.

v.      On or about April 11, 2018, defendant ROBERT M. KOWALSKI appeared at his Initial Debtor Interview and was instructed by the United States Trustee to provide copies of defendant ROBERT M. KOWALSKI's individual and corporate federal income tax returns filed with the Internal Revenue Service for the tax years 2015, 2016, and 2017.

w.      As of April 11, 2018, defendant ROBERT M. KOWALSKI had not filed with the Internal Revenue Service individual income tax returns or all required business income tax returns for tax years 2013 through 2017.

x.      On or about August 7, 2018, the Bankruptcy Court issued an order removing defendant ROBERT M. KOWALSKI as the debtor-in-possession and appointing a trustee to administer the Kowalski Bankruptcy Case (the Trustee).

y.      On or about November 26, 2018, defendant JAN R. KOWALSKI filed an appearance on behalf of defendant ROBERT M. KOWALSKI in the Kowalski Bankruptcy Case.

2.      Beginning in or around March 2018, and continuing until in or around December 2021, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, devised and intended to devise a scheme to defraud, and for the purpose of executing and concealing the scheme and attempting to do so, filed and caused to be filed a petition

45

in a bankruptcy case under Title 11 and documents in a bankruptcy case under Title 11, and made and caused to be made false and fraudulent representations, claims, and promises concerning and in relation to a bankruptcy case under Title 11.

Overview of the Scheme

3.     It was part of the scheme that defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI attempted to and did defraud ROBERT M. KOWALSKI's creditors, including the FDIC, and the Trustee appointed to administer ROBERT M. KOWALSKI's bankruptcy case by concealing at least approximately $567,200 in property belonging to ROBERT M. KOWALSKI's bankruptcy estate, including cash and cash equivalents, interests in corporate entities and trusts, causes of action, interests in real estate, and rents and the rights to collect rents.

4.     It was further part of the scheme that defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI used defendant JAN R. KOWALSKI's attorney trust account both:

a.     to conceal funds which were property of ROBERT M. KOWALSKI's bankruptcy estate from defendant ROBERT M. KOWALSKI's creditors and the Trustee; and

b.     to engage in transactions with funds which were property of ROBERT M. KOWALSKI's bankruptcy estate for the purpose of concealing defendant ROBERT M. KOWALSKI's interest in those funds and in property acquired with those concealed funds.

Property of the Bankruptcy Estate Concealed at the Time the Bankruptcy Was Filed

5.     It was further part of the scheme that, on or about March 29, 2018, defendant ROBERT M. KOWALSKI filed a petition initiating the Kowalski Bankruptcy Case, during the pendency of which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from creditors and the Trustee property of defendant ROBERT M. KOWALSKI's bankruptcy estate, including the following interests of defendant ROBERT M. KOWALSKI, which he held at

46

the time the petition was filed:

      a.     At least approximately $364,600 in cash equivalents;

      b.     Mountain Duck Properties LLC and the five related land trusts; and

      c.     The Mountain Duck Properties Lawsuit.

6.     It was further part of the scheme that, on or about April 25, 2018, defendant ROBERT M. KOWALSKI filed in the Kowalski Bankruptcy Case a Statement of Financial Affairs and a Schedule A/B in which defendant ROBERT M. KOWALSKI concealed from his creditors his interests, including at least approximately $364,600 in cash equivalents, Mountain Duck Properties LLC and the five related land trusts, and the Mountain Duck Properties Lawsuit, all by intentionally omitting his interests in those properties.

### Post-Filing Fraud

*Property of the Bankruptcy Estate Acquired and Concealed During the Bankruptcy*

7.     It was further part of the scheme that, beginning in or around March 2018, following the filing of his bankruptcy petition, defendant ROBERT M. KOWALSKI continued to operate his real estate management business through business entities and opened a Debtor-in-Possession Account at Bank D but defendant ROBERT M. KOWALSKI concealed from his creditors and the Trustee the income he obtained by not depositing income into the Debtor-in-Possession Account and by filing Periodic Reports and Monthly Operating Reports in which he did not account for a material amount of his income.

8.     It was further part of the scheme that, from in or around March 2018 through March 2019, defendant ROBERT M. KOWALSKI collected and possessed approximately $78,800 in rent checks payable to defendant ROBERT M. KOWALSKI or bearer, which he concealed from his creditors and the Trustee by depositing the checks in the accounts of Indomitable LLC and

Piorun Properties LLC, negotiating the checks for cash at currency exchanges, or holding them, instead of depositing the checks into the Debtor-in-Possession Account or tendering the checks to the Trustee.

9. It was further part of the scheme that, from in or around April through July 2018, defendant ROBERT M. KOWALSKI concealed from his creditors funds in the accounts of LLCs he controlled by using approximately $143,000 of those funds to purchase cashier's checks payable to third parties for defendant ROBERT M. KOWALSKI's benefit.

10. It was further part of the scheme that, on or about May 24, 2018, at a Meeting of Creditors, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors his interest in Mountain Duck Properties LLC and the five related land trusts, by defendant ROBERT M. KOWALSKI falsely testifying under oath in the presence of defendant JAN R. KOWALSKI that he did not have an interest in Mountain Duck Properties LLC.

11. It was further part of the scheme that, on or about August 7, 2018, defendant ROBERT M. KOWALSKI attempted to use the Kowalski Bankruptcy Case to stay the Divorce Case.

12. It was further part of the scheme that, in or around approximately October 2018, defendant ROBERT M. KOWALSKI caused others to move the Sea Ray boat from Burnham Harbor in Chicago, Illinois to another location.

13. It was further part of the scheme that, on or about November 26, 2018, and again on or about December 3, 2018, defendant ROBERT M. KOWALSKI falsely represented to the Trustee and a creditor, namely, the FDIC, that he was not involved in the relocation of the Sea Ray boat and did not know the location of the boat.

*Use of the Attorney Trust Account to Conceal Property of the Bankruptcy Estate*

14.     It was further part of the scheme that, from in or around August through October 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $352,100 in cashier's checks for which defendant ROBERT M. KOWALSKI was both the remitter and the payee, by depositing the cashier's checks into defendant JAN R. KOWALSKI's attorney trust account, instead of tendering the cashier's checks to the Trustee.

15.     It was further part of the scheme that, in or around September through October 2018, defendant ROBERT M. KOWALSKI collected and possessed approximately $3,400 in rent checks payable to defendant ROBERT M. KOWALSKI, which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI then concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee by causing the checks to be deposited into defendant JAN R. KOWALSKI's attorney trust account, instead of tendering the checks to the Trustee.

*Providing False Income Tax Returns*

16.     It was further part of the scheme that, in or around May 2018, defendant ROBERT M. KOWALSKI prepared and filed individual and business federal income tax returns with the Internal Revenue Service and then, on or about June 12, 2018, provided to the United States Trustee certain individual and business federal income tax returns which were materially false, including as follows:

a.     defendant ROBERT M. KOWALSKI's 2015, 2016, and 2017 U.S. Individual Income Tax Returns (Forms 1040 with schedules and attachments) overstated deductions and understated adjusted gross income;

49

b.      Piorun Properties LLC's 2014 U.S. Income Tax Return for an S Corporation (Form 1120S with schedules and attachments) understated income in that it did not report income that Piorun Properties LLC received in the form of funds embezzled from Washington Federal;

c.      Piorun Properties LLC's 2015 U.S. Income Tax Return for an S Corporation (Form 1120S with schedules and attachments) understated income in that it did not report income that Piorun Properties LLC received from the Chicago Housing Authority related to the Mountain Duck Properties; and

d.      Piorun Properties LLC's 2014 and 2015 U.S. Income Tax Returns for an S Corporation (Form 1120S with schedules and attachments) were not copies of the 2014 and 2015 corporate returns filed with the Internal Revenue Service.

*Use of the Attorney Trust Account to Engage in
Transactions to Conceal Property of the Bankruptcy Estate*

17.·     It was further part of the scheme that, in or around June, July, and October 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $96,600, including funds which defendants had concealed in defendant JAN R. KOWALSKI's attorney trust account, by using those funds, as described in paragraphs 18 and 19 below, to purchase 6821 West 96th Street, Oak Lawn, Illinois (the Oak Lawn Property), in the name of a nominee for defendant ROBERT M. KOWALSKI (the Nominee).

18.     It was further part of the scheme that, on or about June 18 and July 24, 2018, defendant ROBERT M. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $21,000, which he used to purchase cashier's checks payable to the Nominee, then caused the checks to be deposited into the Nominee's bank account and then caused the funds to be wired on or about October 12, 2018, to a title company account to

fund the purchase of the Oak Lawn Property.

19.     It was further part of the scheme that, on or about October 12, 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $75,600, which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI caused to be wired to a title company account to fund the purchase of the Oak Lawn Property.

20.     It was further part of the scheme that, on or about September 13, 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $2,500 which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI had concealed in defendant JAN R. KOWALSKI's attorney trust account by using the funds as earnest money in an attempt to purchase 9441 South Indiana Avenue, Chicago, Illinois, in the name of a fictitious trust of which defendant ROBERT M. KOWALSKI was the beneficiary.

21.     It was further part of the scheme that, in or around September through October 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee funds that had been concealed in defendant JAN R. KOWALSKI's attorney trust account by purchasing approximately $350,300 in cashier's checks payable to or for the benefit of defendant ROBERT M. KOWALSKI.

22.     It was further part of the scheme that, in or around October through December 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed funds from defendant ROBERT M. KOWALSKI's creditors and the Trustee through defendant JAN R. KOWALSKI depositing into her attorney trust account approximately $325,900 of the cashier's checks that defendant JAN R. KOWALSKI had purchased as described in paragraph 21 above.

23.     It was further part of the scheme that, in or around October through December 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed funds from defendant ROBERT M. KOWALSKI's creditors and the Trustee through defendant JAN R. KOWALSKI's withdrawal of approximately $241,800 in United States currency from defendant JAN R. KOWALSKI's attorney trust account.

24.     It was further part of the scheme that, in or around August 2018 through December 2021, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed property of defendant ROBERT M. KOWALSKI's bankruptcy estate by obstructing the efforts of the creditors and the Trustee to obtain records of property of the estate and to locate property of the estate.

25.     It was further part of the scheme that defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI did misrepresent, conceal and hide, and cause to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purposes of those acts.

26.     On or about March 29, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a petition in a proceeding under Title 11, namely, a Chapter 11 bankruptcy case, *In re Robert M. Kowalski*, 18-09130;

In violation of Title 18, United States Code, Section 157(1).

52

## COUNT TWELVE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.　　Paragraphs 1 through 25 of Count Eleven are incorporated here.

2.　　On or about April 25, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a document, namely a Statement of Financial Affairs and a Schedule A/B, in a proceeding under Title 11, namely, a Chapter 11 bankruptcy case, *In re Robert M. Kowalski*, 18-09130;

In violation of Title 18, United States Code, Section 157(2).

## COUNT THIRTEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1 through 25 of Count Eleven are incorporated here.

2.     On or about May 24, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, for the purpose of executing and concealing the above described scheme and attempting to do so, made and caused to be made a false and fraudulent representation, namely that ROBERT M. KOWALSKI did not have an interest in Mountain Duck Properties, in a proceeding under Title 11, namely, a Chapter 11 bankruptcy case, *In re Robert M. Kowalski*, 18-09130;

In violation of Title 18, United States Code, Section 157(3).

## COUNT FOURTEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1 through 25 of Count Eleven are incorporated here.

2.      On or about January 9, 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a document, namely a Combined Response to Trustee's Motion For Accounting and Turnover of Estate Funds Against Jan Kowalski and Rule to Show Cause Against Jan Kowalski and Debtor, in a proceeding under Title 11, namely, a Chapter 11 bankruptcy case, *In re Robert M. Kowalski*, 18-09130;

In violation of Title 18, United States Code, Section 157(2).

## COUNT FIFTEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraph 1.g. of Count One and paragraphs 1.b., 1.m., and 1.x. of Count Eleven are incorporated here.

2.     From on or about March 29, 2018, through in or around June 2020, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, knowingly and fraudulently concealed from a trustee charged with the control and custody of property and, in connection with a case under Title 11, namely, *In re Robert M. Kowalski*, 18-09130, from creditors and the United States Trustee, property belonging to the estate of a debtor, namely, ROBERT M. KOWALSKI, to wit, approximately $567,200 and the Sea Ray boat;

In violation of Title 18, United States Code, Section 152(1).

## COUNT SIXTEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraph 1.k. of Count One and paragraphs 1.m., 1.u. through 1.w., and 16 of Count Eleven are incorporated here.

2.     On or about June 12, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI,

defendant herein, after the filing of a case under Title 11, namely, *In re Robert M. Kowalski*, 18-09130, knowingly and fraudulently falsified and made false entries in recorded information relating to the financial affairs of debtor ROBERT M. KOWALSKI, in that defendant caused to be created for the purpose of providing to the United States Trustee individual and business federal income tax returns which were materially false as follows:

a.     Defendant ROBERT M. KOWALSKI's 2015, 2016, and 2017 U.S. Individual Income Tax Returns (Forms 1040 with schedules and attachments) overstated deductions and understated adjusted gross income;

b.     Piorun Properties LLC's 2014 U.S. Income Tax Return for an S Corporation (Form 1120S with schedules and attachments) understated income in that it did not report income that Piorun Properties LLC received in the form of funds embezzled from Washington Federal; and

c.     The Piorun Properties LLC's 2014 and 2015 U.S. Income Tax Returns for an S Corporation (Forms 1120S with schedules and attachments) were not copies of the returns filed with the IRS;

In violation of Title 18, United States Code, Section 152(8).

57

## COUNT SEVENTEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraph 1.k. of Count One and paragraphs 1.c. and 1.g. of Count Eleven are incorporated here.

2.     Beginning on or about January 1, 2013 and continuing through on or about December 31, 2013, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, had and received gross income of at least $10,000, and jointly with his wife had and received gross income of at least $20,000.   By reason of such gross income, defendant was required by law, following the close of the calendar year 2013 and on or before April 15, 2014, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled.   Knowing the foregoing, defendant did willfully fail, on or about April 15, 2014, in the Northern District of Illinois, and elsewhere, to make said income tax returns or return;

In violation of Title 26, United States Code, Section 7203.

## COUNT EIGHTEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.k. and 47.m. of Count One and paragraphs 1.g. and 1.h. of Count Eleven are incorporated here.

2.      On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Income Tax Return for an S Corporation on behalf of Piorun Properties LLC (Form 1120S with schedules and attachments), for the calendar year 2014, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on line 6 that the corporation's total income was $0, when defendant knew that the corporation received gross income in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT NINETEEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.k. and 47.m. of Count One and paragraphs 1.g. through 1.i. of Count Eleven are incorporated here.

2.      Beginning on or about January 1, 2014 and continuing through on or about December 31, 2014, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, had and received gross income of at least $10,150, and jointly with his wife had and received gross income of at least $20,300.   By reason of such gross income, defendant was required by law, following the close of the calendar year 2014 and on or before April 15, 2015, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled.   Knowing the foregoing, defendant did willfully fail, on or about April 15, 2015, in the Northern District of Illinois, and elsewhere, to make said income tax returns or return;

In violation of Title 26, United States Code, Section 7203.

## COUNT TWENTY

The SPECIAL MAY 2021 GRAND JURY further charges:

1.       Paragraph 1.k. of Count One and paragraphs 1.d. through 1.h. of Count Eleven are incorporated here.

2.       On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Income Tax Return for an S Corporation on behalf of Piorun Properties LLC (Form 1120S with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on attached Form 8825, Rental Real Estate Income and Expense of a Partnership or an S Corporation, line 18a, that the corporation's total gross rents were $73,547, when defendant knew that the corporation received gross rents in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

61

## COUNT TWENTY-ONE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraph 1.k. of Count One and paragraphs 1.d. through 1.h. and 1.j. through 1.l. of Count Eleven are incorporated here.

2.      On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.      On line 31a, that defendant had paid $252,000 in alimony, when defendant knew he had not paid alimony in that amount; and

b.      On line 37, that defendant's adjusted gross income was $ - 217,056, when defendant knew that his adjusted gross income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT TWENTY-TWO

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraph 1.k. of Count One and paragraphs 1.g. and 1.j. through 1.l. of Count Eleven are incorporated here.

2.     On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.     On line 31a, that defendant had paid $252,000 in alimony, when defendant knew he had not paid alimony in that amount; and

b.     On line 37, that defendant's adjusted gross income was $ - 172,308, when defendant knew that his adjusted gross income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT TWENTY-THREE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraph 1.k. of Count One and paragraphs 1.g. and 1.j. through 1.l. of Count Eleven are incorporated here.

2.     On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2017, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.     On line 31a, that defendant had paid $252,000 in alimony, when defendant knew he had not paid alimony in that amount; and

b.     On line 37, that defendant's adjusted gross income was $ - 94,831, when defendant knew that his adjusted gross income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

64

## COUNT TWENTY-FOUR

The SPECIAL MAY 2021 GRAND JURY further charges:

1. Paragraphs 1.a. and 1.l. of Count One are incorporated here.

2. Thomas Development Co., Inc. was an entity owned by defendant BOGUSLAW KASPROWICZ, and for tax years 2014-2017, filed U.S. Income Tax Returns for an S Corporation (Forms 1120S with schedules and attachments). The ordinary income and losses of Thomas Development Co., Inc. required to be reported on the Forms 1120S flowed through to BOGUSLAW KASPROWICZ personally, and were required to be reported on defendant KASPROWICZ's U.S. Individual Income Tax Returns (Forms 1040 with schedules and attachments).

3. On or about April 3, 2015, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Income Tax Return for an S Corporation on behalf of Thomas Development Co., Inc. (Form 1120S with schedules and attachments), for the calendar year 2014, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1120S, line 6, that the corporation had no total income, when defendant knew that the corporation received gross income in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

65

## COUNT TWENTY-FIVE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.      On or about April 3, 2015, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2014, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1040, line 22, that defendant's total income was $ -2,960,376, when defendant knew that his total income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

66

## COUNT TWENTY-SIX

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.      On or about March 28, 2016, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Income Tax Return for an S Corporation on behalf of Thomas Development Co., Inc. (Form 1120S with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1120S, line 6, that the corporation had no total income, when defendant knew that the corporation received gross income in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT TWENTY-SEVEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.     On or about March 28, 2016, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1040, line 22, that defendant's total income was $ -2,970,376, when defendant knew that his total income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT TWENTY-EIGHT

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.      On or about April 10, 2017, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Income Tax Return for an S Corporation on behalf of Thomas Development Co., Inc. (Form 1120S with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1120S, line 6, that the corporation had no total income, when defendant knew that the corporation received gross income in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

69

## COUNT TWENTY-NINE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.      On or about April 12, 2017, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1040, line 22, that defendant's total income was $ -2,970,376, when defendant knew that his total income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## **COUNT THIRTY**

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.      On or about March 21, 2018, in the Northern District of Illinois, Eastern Division,

BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Income Tax Return for an S Corporation on behalf of Thomas Development Co., Inc. (Form 1120S with schedules and attachments), for the calendar year 2017, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1120S, line 6, that the corporation had no total income, when defendant knew that the corporation received gross income in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

71

## COUNT THIRTY-ONE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.　　　Paragraphs 1.a. and 1.l. of Count One and paragraph 2 of Count Twenty-Four are incorporated here.

2.　　　On or about April 11, 2018, in the Northern District of Illinois, Eastern Division,

### BOGUSLAW KASPROWICZ,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2017, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

On Form 1040, line 22, that defendant's total income was $ -2,965,276, when defendant knew that his total income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTY-TWO

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. and 1.h. of Count One are incorporated here.

2.     Defendant WILLIAM M. MAHON owned a multi-unit building located on the 3800 block of S. Lowe Avenue in Chicago, living in one unit and renting out the other two units.

3.     Defendant WILLIAM M. MAHON received rental income from his tenants, including checks made payable to defendant MAHON.   Defendant MAHON did not deposit the checks into a bank account in his name; rather, he signed the checks over to Washington Federal as payment on his outstanding loans at Washington Federal.

4.     Defendant WILLIAM M. MAHON provided to his tax return preparer written spreadsheets which made false representations about his rental units, including underreporting the amount of rental income earned and inflating and fabricating expenses incurred.

5.     On or about February 6, 2014, in the Northern District of Illinois, Eastern Division,

WILLIAM M. MAHON,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2013, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.     On Form 1040, Schedule E, line 23a, that he received rent in the amount of $17,000, when defendant knew he had received rental payments in excess of the amount reported on the return; and

73

b.     On Form 1040, Schedule E, line 23e, that he had rental expenses in the amount of $77,712, when defendant knew that the expenses associated with his rental units were less than the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTY-THREE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. and 1.h. of Count One and paragraphs 2 through 4 of Count Thirty-Two are incorporated here.

2.     On or about February 7, 2015, in the Northern District of Illinois, Eastern Division,

### WILLIAM M. MAHON,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2014, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.     On Form 1040, Schedule E, line 23a, that he received rent in the amount of $14,500, when defendant knew he had received rental payments in excess of the amount reported on the return; and

b.     On Form 1040, Schedule E, line 23e, that he had rental expenses in the amount of $78,882, when defendant knew that the expenses associated with his rental units were less than the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTY-FOUR

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. and 1.h. of Count One and paragraphs 2 through 4 of Count Thirty-Two are incorporated here.

2.     On or about February 6, 2016, in the Northern District of Illinois, Eastern Division,

WILLIAM M. MAHON,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.     On Form 1040, Schedule E, line 23a, that he received rent in the amount of $14,500, when defendant knew he had received rental payments in excess of the amount reported on the return; and

b.     On Form 1040, Schedule E, line 23e, that he had rental expenses in the amount of $81,186, when defendant knew that the expenses associated with his rental units were less than the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTY-FIVE

The SPECIAL MAY 2021 GRAND JURY further charges:

1.     Paragraphs 1.a. and 1.h. of Count One and paragraphs 2 through 4 of Count Thirty-Two are incorporated here.

2.     On or about February 11, 2017, in the Northern District of Illinois, Eastern Division,

### WILLIAM M. MAHON,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.     On Form 1040, Schedule E, line 23a, that he received rent in the amount of $14,500, when defendant knew he had received rental payments in excess of the amount reported on the return; and

b.     On Form 1040, Schedule E, line 23e, that he had rental expenses in the amount of $82,860, when defendant knew that the expenses associated with his rental units were less than the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTY-SIX

The SPECIAL MAY 2021 GRAND JURY further charges:

1.      Paragraphs 1.a. and 1.h. of Count One and paragraphs 2 through 4 of Count Thirty-Two are incorporated here.

2.      On or about February 19, 2018, in the Northern District of Illinois, Eastern Division,

WILLIAM M. MAHON,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2017, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.      On Form 1040, Schedule E, line 23a, that he received rent in the amount of $14,500, when defendant knew he had received rental payments in excess of the amount reported on the return; and

b.      On Form 1040, Schedule E, line 23e, that he had rental expenses in the amount of $83,928, when defendant knew that the expenses associated with his rental units were less than the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THIRTY-SEVEN

The SPECIAL MAY 2021 GRAND JURY further charges:

1.       Paragraphs 1.a. and 1.h. of Count One and paragraphs 2 through 4 of Count Thirty-Two are incorporated here.

2.       On or about February 9, 2019, in the Northern District of Illinois, Eastern Division,

WILLIAM M. MAHON,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2018, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.       On Form 1040, Schedule E, line 23a, that he received rent in the amount of $14,500, when defendant knew he had received rental payments in excess of the amount reported on the return; and

b.       On Form 1040, Schedule E, line 23e, that he had rental expenses in the amount of $85,721, when defendant knew that the expenses associated with his rental units were less than the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## FORFEITURE ALLEGATION ONE

The SPECIAL MAY 2021 GRAND JURY further alleges:

1.    Upon conviction of an offense in violation of Title 18, United States Code, Section 371 as alleged in this Fourth Superseding Indictment, each defendant shall forfeit to the United States of America any and all right, title, and interest each may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C).

2.    The property to be forfeited includes, but is not limited to, approximately $31 million.

3.    If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

## FORFEITURE ALLEGATION TWO

The SPECIAL MAY 2021 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Sections 656 and 1005, as alleged in this Fourth Superseding Indictment, each defendant shall forfeit to the United States of America any and all right, title, and interest each may have in any property, real and personal, which constitutes and is derived from proceeds the defendant obtained directly or indirectly as the result of the offense, as provided in Title 18, United States Code, Section 982(a)(2).

2.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

## FORFEITURE ALLEGATION THREE

The SPECIAL MAY 2021 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 152(1) and (8), as alleged in this Fourth Superseding Indictment, each defendant shall forfeit to the United States of America any and all right, title, and interest each may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C).

2.     The property to be forfeited includes, but is not limited to, approximately $567,200 and any interest in the Sea Ray 420 Sundancer boat named "Expelliarmus."

3.     If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).


A TRUE BILL:


_____
FOREPERSON


_____
UNITED STATES ATTORNEY